Jack O'SHEA, Appellant,

v.

CORONADO TRANSMISSION
COMPANY, et al., Appellees.

No. 13–82–101–CV.

Court of Appeals of Texas,
Corpus Christi.

June 23, 1983.

Rehearing Denied Sept. 8, 1983.

J. Norman Thomas, Harris, Cook & Browning, Corpus Christi, for appellant.

Charles R. Porter, Jr., Porter, Gonzalez & Rogers, Corpus Christi, Cecil E. Munn, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, for appellees.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

Jack O'Shea appeals from an order granting summary judgment in favor of Coronado Transmission Company which had brought suit for declaratory judgment against O'Shea arising from a dispute over the terms of a contract. We affirm in part and reverse and remand in part.

In 1975, Jack O'Shea learned of an opportunity to develop a gas pipeline project in Alabama from an ad in the Wall Street Journal. O'Shea telephoned Winfred Lott, the Alabama promoter, to gain details of the plan. He then approached his neighbor, Louis Fritz, to see if Fritz was interested in constructing the pipeline. Fritz was president of Coronado Transmission Company, which he owned jointly with William K. Anderson. Fritz was not interested in being the contractor for such pipeline but was interested in forming a company in which he would have an equity interest. On August 4, 1976, after months of negotiations, Coronado Transmission Company, O'Shea, and Lott signed a Pre-Incorporation Agreement whereby they agreed to form the Alatex Pipeline Corporation within 120 days to construct the pipeline. Under this agreement, Lott and O'Shea were described as agents of Coronado whose relative ownership of the Alatex Pipeline stock would depend solely on the services they would perform in obtaining financing for the project. In financing the project, there was to be no personal obligation on the part of Fritz, Anderson or Coronado. The agreement provided that if O'Shea was *unable* to obtain financing for the project, he would own 5% of the Alatex stock. The agreement also provided that the agents had the option of exchanging their stock ownership for a net revenue interest after payout of the pipeline system had been realized by Alatex. If O'Shea was *able* to finance the entire project by means of debt financing, he would be entitled to 25% of the Alatex stock. Another provision addressed the respective percentages if equity financing was obtained. *The agreement gave O'Shea thirty days to arrange financing. Ultimately, O'Shea was unable to arrange financing* for the project and the corporation called for in the Pre-Incorporation Agreement (Alatex) was never formed.

On November 23, 1976, Coronado and several individuals entered into a limited partnership for the construction of the pipeline. Coronado became the general partner and the three others were named as limited partners. As a result of this agreement, Coronado was entitled to 45/70 of the revenues from the pipeline project. O'Shea was not a party to this agreement.

On March 15, 1977, after the pipeline had been constructed, O'Shea signed a Net Revenue Interest Agreement (hereinafter referred to as NRIA) with Coronado which specifically *terminated the Pre-Incorporation Agreement and provided O'Shea with 5% of Coronado's revenues from the pipeline once* Coronado recouped its investment costs. In May, 1979, pursuant to this agreement, O'Shea received his first check from Coronado. The check was for 5% of Coro-

nado's 45/70 revenues from the pipeline. O'Shea returned the check to Coronado and claimed that the agreement entitled him to 5% of the total pipeline revenues. Coronado then sought a Declaratory Judgment to determine its obligation to O'Shea, based on the NRIA. O'Shea filed a counter-claim against Coronado for damages based in part on alleged violations of the Deceptive Trade Practices-Consumer Protection Act, 17.41 et seq. Tex.Rev.Civ.Stat.Ann. (Vernon's Supp. 1982). The counter-claim also alleged fraud, failure of consideration and ambiguity.[1] Thereafter, O'Shea amended his counter-claim and joined WRD '76 Ltd., F.M. Whitley and Leland W. Carter. These are Coronado's limited partners that financed the project after O'Shea failed to arrange the financing. Coronado moved for summary judgment, which O'Shea opposed. The trial court granted Coronado's summary judgment *both* on its suit for Declaratory Judgment and on O'Shea's counter-claim. The trial court also dismissed the suit as to Fritz, Anderson, WRD '76 Ltd., Whitley and Carter.

The summary judgment evidence was the Pre-Incorporation Agreement, the NRIA, and the depositions of O'Shea, Anderson, Fritz and Coronado's limited partners. No affidavits were filed.

On appeal, O'Shea contends in point 1 that the trial court erred in granting the summary judgment in Coronado's favor because the NRIA is *"unambiguous"*, and should be construed in O'Shea's favor; in point of error 2, O'Shea contends that the NRIA is *"ambiguous";* points 3, 4, 5 and 6 allege that the trial court committed error in granting the summary judgment because there exist fact issues of fraud, failure of consideration, non-disclosure by a fiduciary and mutual mistake; and point 7 alleges that the trial court error in dismissing the claims against the individual defendants.

### Declaratory Judgment—Summary Judgment

■ The well-established rule is that a summary judgment should be granted only

if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970). In *Wilcox v. St. Mary's University of San Antonio, Inc.,* 531 S.W.2d 589 (Tex.1976), the court held that, in reviewing a summary judgment record, appellate courts must apply the following rules:

1. The movant for summary judgment ... has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor.

This court must therefore determine whether there are issues to be tried; it should not attempt to weigh the evidence or determine its credibility. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952).

The non-movant must expressly present to the trial court any reasons seeking to avoid movant's entitlement, such as those set out in Tex.R.Civ.P. 93 and 94, (verified pleas and affirmative defenses) and he must present summary judgment proof when necessary to establish a fact issue. The movant is not required to negate all possible issues of law and fact that could be raised by the non-movant in the trial court but were not. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979).

■ The rule is that where the plaintiff moves for summary judgment in an action in which the defendant has pled an affirmative defense, he is entitled to have his summary judgment if he demonstrates by evidence that there is no material factual issue upon the elements of *his claim,* unless his opponent comes forward with a showing that there is such a disputed fact issue upon the affirmative defense. *Hudnall v. Tyler*

---

1. Lott was not a party to this suit.

*Bank and Trust Company,* 458 S.W.2d 183 (Tex.1970); *Gulf, Colorado & Santa Fe Railway Co. v. McBride,* 159 Tex. 442, 322 S.W.2d 492 (1959).

■ Our initial attention must be focused on whether the trial court erred in finding the NRIA unambiguous. The question of whether a contract is ambiguous is one of law to be determined by the court. *Vermillion Construction Company v. Fidelity & Deposit Company of Maryland,* 526 S.W.2d 744 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Louisiana-Pacific Corp. v. Cain,* 519 S.W.2d 528 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.); *Davis v. Andrews,* 361 S.W.2d 419 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). The interpretation of a contract becomes a fact question only, when after application of pertinent rules of construction, there remains a genuine uncertainty as to which of two meanings is proper. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154 (1951); *Sale v. Contran Corporation,* 486 S.W.2d 161 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). However, if a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1982); *Lewis v. East Texas Finance Company,* 136 Tex. 149, 146 S.W.2d 977, 980 (1941).

In *Sun Oil Co.,* supra at 731, the Supreme Court, citing *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515 (Tex. 1968), said:

"In *Pinehurst,* we found the contract to be unambiguous and wrote:

It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. 432 S.W.2d at 518."

■ When a contract contains an ambiguity which can only be resolved by reference to extrinsic evidence or where there is doubt to the true meaning of an ambiguous instrument, the granting of a motion for summary judgment is improper. *Thompson v. Hambrick,* 508 S.W.2d 949 (Tex.Civ.App. —Dallas 1974, writ ref'd n.r.e.); *Robert v. E.C. Milstead Ranching, Inc.,* 469 S.W.2d 429 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.).

■ With the above rules in mind, we must now turn to the NRIA which is the center of this dispute. Paragraph II of the agreement, which is the portion of the agreement that defines O'Shea's percentage, provides:

"Coronado does hereby convey and assign to each Agent severally and individually, an undivided interest equal to five percent *(5%) of the net revenues derived by Coronado from its sales of natural gas to Alabama Gas Corporation,* as more particularly described, and subject to the terms and conditions contained herein. This agreement is effective as of the date first hereinabove written.

Net revenue is defined herein as gross revenues less an operations and management fee as set forth in Article IX contained herein, purchase gas costs and third party transportation, gathering, treating, and/or compression expenses, but excluding the deduction of Federal Income Tax expenses." [2] (Emphasis supplied.)

In the agreement, O'Shea and Lott were again labeled as agents. The first paragraph of the agreement specifically says that the agents have elected to receive a net revenue interest as contemplated by the Pre-Incorporation Agreement and that by accepting the net revenue interest the Pre-Incorporation Agreement is totally terminated.

In reviewing the terms of the NRIA we hold that the trial court did not err in finding the agreement unambiguous and that O'Shea was entitled to five percent of

---

**2.** Article IX provides for a $120,000.00 management fee to Coronado.

Coronado's 45/70 of the pipeline revenues instead of five percent of the total pipeline revenues as argued by O'Shea. The agreement, in clear language, provides that O'Shea is to receive five percent of the net revenues *derived by Coronado,* and not five percent of the net revenues from the pipeline. The trial court did not err in interpreting the contract. Appellant's points of error 1 and 2 are overruled.

### O'Shea's Affirmative Defenses

█ We now turn to the appellant's contention that the summary judgment evidence showed the existence of fact issues in reference to the affirmative defense of fraud. The elements of fraud are based on a false statement of a material fact made to be acted on and actually believed and acted on with the consequential injury to the person acting thereon. *Long v. Smith,* 466 S.W.2d 32 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). If the affirmative defense has more than one element, then a fact issue must be raised on each element necessary to such defense. This is so, because if an issue is not raised on each element of the defense, there is no defense. *Nichols v. Smith,* 507 S.W.2d 518 (Tex.1974). We look to the summary judgment evidence for proof on each of these elements.

█ The NRIA between O'Shea and Coronado provided that O'Shea would receive five percent of the net revenues derived by Coronado from its sales of natural gas from the Alabama pipeline. O'Shea argues that he was under the belief that the NRIA he signed with Coronado on March 15, 1977 entitled him to 5% of the total revenues from the project, not merely 5% of Coronado's revenues.

In support of his allegations O'Shea deposed that he was unaware of the limited partnership agreement that Coronado had entered into with Whitley, Carter, and W.R.D. '76 Ltd. He further deposed that:

1) Louis Fritz had always indicated that O'Shea was entitled to five percent of the project;
2) he understood that he was getting five percent interest in the project;
3) he had no reason to believe that Coronado would sell part of his interest without his knowledge or consent;
4) if he had known he was not getting five percent of the total project he would not have signed the net revenue interest agreement.

Although O'Shea admitted that he never inquired into how the project was financed nor asked for any documentation concerning the financing of the project he explained that he didn't care how it was financed since he was getting his five percent. When asked if he had been relying on the language of the Pre-Incorporation Agreement to support his belief that his interest was five percent of the total pipeline revenue, O'Shea responded:

"No, I wasn't relying on that, I was relying on the good faith of William K. Anderson and Louis Fritz because we all verbally had the understanding that the five percent was five full percent. I had absolutely no idea that there would be an attempt to give me less than five percent or I never would have signed this Agreement."

Later, O'Shea reiterated that he was relying on "verbal and written" information that he was to receive five percent of the total revenue.

Under the circumstances of this record, indulging every reasonable inference in O'Shea's favor, as we must do, we find that a fact issue as to fraud was raised. Since O'Shea testified by deposition that he was never informed about the creation of the limited partnership and was told "verbally" that the NRIA entitled him to five percent of the total pipeline revenues, we hold that if these statements are believed, they raise a fact issue as to whether O'Shea was fraudulently induced into signing the NRIA. Appellant's third point of error is sustained.

### Failure of Consideration

█ In his fourth point of error, appellant contends that the trial court erred in granting summary judgment because a

fact issue was raised on the issue of failure of consideration. Generally, failure of consideration occurs when, because of some supervening cause after an agreement is reached, the promised performance fails. See 17 C.J.S. Contracts, 129–130 (1963). In this case, there is no evidence which shows an event occurring after the contract was signed which would prevent performance. Appellant's fourth ground of error is overruled.

### Nondisclosure of Fiduciary

In his fifth point of error, appellant contends that the summary judgment evidence showed the existence of fact issues in reference to the affirmative defense of nondisclosure by a fiduciary. We disagree. Although O'Shea and Coronado were both engaged in the pursuit of their common goal to organize and operate a gas pipeline project in Alabama, the record indicates that throughout these efforts Coronado, O'Shea, and others involved in the project negotiated with each other concerning their respective interests in the project and the financing structure of the operation, as would any party in an arms-length transaction. A fiduciary relationship generally arises over a long period of time when parties have worked together towards a mutual goal. *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d 333 (Tex. 1966). To establish a fiduciary relationship, the evidence must show that the dealings between the parties have continued for such a period of time that one party is justified in relying on the other to act in his best interest. *Gonzalez v. City of Mission,* 620 S.W.2d 918 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Thomson v. Norton,* 604 S.W.2d 473 (Tex.Civ.App.—Dallas 1980, no writ).

In this case, the appellant has failed to raise a fact issue as to the existence of or breach of a fiduciary duty. Appellant's fifth point of error is overruled.

### Mutual Mistake

In his sixth point of error, appellant contends that the trial court erred in granting summary judgment because the evidence raised a fact issue on mutual mistake. Mutual mistake occurs when both parties to a contract were acting under the same misunderstanding of the same material fact. *Newsom v. Starkey,* 541 S.W.2d 468 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). There is no evidence that Fritz or Anderson were acting under a misunderstanding in their dealings with O'Shea. Therefore, there is no evidence of mutual mistake. Appellant's sixth point of error is overruled.

### Dismissal

In his seventh point of error appellant contends that the trial court erred in dismissing the individual cross-defendants because there was no evidence presented to justify their dismissal. The record shows that on October 6, 1981, cross-defendants W.R.D. '76 Ltd., F.M. Whitley, Leland Carter, Louis A. Fritz and William K. Anderson filed a motion to dismiss them from the lawsuit. The motion stated that cross-plaintiff O'Shea had not alleged any cause of action against W.R.D. '76 Ltd., Whitley, or Carter and had prayed for no affirmative relief against them. The motion also stated that Fritz and Anderson were at all times acting in their capacity as officers of Coronado and that O'Shea had not alleged a cause of action against them individually. Following the filing of this motion, O'Shea twice amended his cross-claim but in neither pleading did he allege any grounds for a cause of action against W.R.D. '76 Ltd., Whitley, or Carter.

On December 11, 1981, the trial court heard Coronado's motion for summary judgment and the motion to dismiss cross-defendants. On December 18, 1981, the trial court signed an order dismissing W.R.D. '76 Ltd., Whitley and Carter, but reserving for further ruling the motion to dismiss as to Fritz and Anderson. On January 27, 1982, the trial court granted Coronado's motion for summary judgment and granted the motion to dismiss Fritz and Anderson.

Appellant now complains on appeal that in granting the motion to dismiss the cross-defendants the trial court "merely heard argument of counsel for the parties thereby depriving the appellant of an evidentiary hearing and his right to due process." He contends that the trial court should have heard evidence before dismissing the cross-defendants.

In passing on the appellant's point of error, we restrict ourselves to passing only on appellant's contention and note that he makes no other complaint concerning the manner in which the trial court dismissed the cross-defendants.

■ Generally, the proper way for a defendant to urge that a plaintiff has failed to plead a cause of action is by special exception. *Texas Department of Corrections v. Herring,* 513 S.W.2d 6 (Tex.1974); *Atkinson v. Reid,* 625 S.W.2d 64 (Tex.App. —San Antonio 1981, no writ); *Bryce v. Corpus Christi Area Convention and Tourist Bureau,* 569 S.W.2d 496 (Tex.Civ.App.— Corpus Christi 1978, writ ref'd n.r.e.). The rule is that where a plaintiff's petition fails to state a cause of action, and the defendant files special exceptions to the pleading which are sustained, the plaintiff must be given an opportunity to amend his pleadings. If the plaintiff fails to amend, or amends and fails to state a cause of action, the trial court is authorized to dismiss the plaintiff's suit. *Herring,* supra.

■ In the instant case, appellant complains only that no evidence was presented to the trial court before the motion to dismiss was granted. There is nothing in the record before this Court to indicate that appellant O'Shea offered any evidence or was prevented from offering any evidence on the motion. As noted in *PGP Gas Products, Inc. v. Fariss,* 620 S.W.2d 559 (Tex.1981), the predicates for complaints on appeal must be preserved at the trial court level by motion, exception, objection, plea in abatement, or some other vehicle. Tex.R. Civ.P. 372, 373. To preserve a point of error pertaining to the exclusion of evidence, it must be shown that the trial court, after a timely request, affirmatively refus-ed to take the requested action. Both the request and the refusal must be contained in the appellate record. *Harris v. Harris,* 605 S.W.2d 684 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). In the instant case, the necessary showing was not made. The appellant's seventh point of error is overruled.

The portion of the trial court's judgment granting summary judgment to Coronado on the Declaratory Judgment is reversed and remanded. That portion of the trial court judgment dismissing the case as to Fritz, Anderson W.R.D. '76 Ltd., Whitley and Carter is affirmed.