Edgar BERNAL, Individually, d/b/a
Antimony Products of America
(APOA), Appellant,

v.

John GARRISON, Appellee.

No. 13–90–393–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1991.

Rehearing Overruled Nov. 14, 1991.

Keith C. Livesay, Nolan K. Stutzman, McAllen, for appellant.

M. Lloyd Seljos, McAllen, for appellee.

Before NYE, C.J. and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

This is an action for breach of contract. Appellee, John Garrison, sued appellant, Edgar Bernal, individually and d/b/a APOA, and Antimony Products of America d/b/a APOA, alleging breach of a written employment contract. The jury found that APOA breached the contract and awarded Garrison damages, attorney's fees for preparation and trial, and appeal. The trial court entered judgment against Antimony Products of America (APOA), adding on $5,085.09 in prejudgment interest. Only APOA is a party to this appeal. APOA brings ten points of error. We reform the judgment, and, as reformed, we affirm.

The evidence shows that Edgar Bernal was APOA's managing director. Bernal and John Garrison talked about developing a maquiladora facility along the Texas–Mexican border. The facility, as planned, would use a blast furnace to process antimony and export and import its products into the United States. APOA and Garrison entered into a "Consultant Agreement." The agreement, dated March 6, 1987, stated, in pertinent part:

This agreement shall cover the activities pursuant to the formation, construction and operation of [an] antimony fuming facility in the Reynosa, Mexico area. Undertakings by John Garrison

1. To secure property acceptable to the investors on [the] basis of a [sic] acceptable lease with an option to purchase.

2. Secure all permits to operate a facility as outlined under the maquiladora provisions. The permits will relate to SE-COFIN AND SEDUE requirements.

3. To erect and construct the fuming facility as directed by the investors at item 1 above.

4. Commence operations according [to the] parameters/requirements of the investors.

5. Compensation shall take place according to the following schedule:

5a. U.S. $2,000.00 per month from mutually agreed date following the acquisition of the property.

5b. U.S. $3,000.00 per month from date of approval and assignment of number by SECOFIN.

5c. U.S. $1,000.00 per week commencing with operation of fuming facility.

6. A written status report shall be submitted by telex bi-weekly to APOA during the period covered above.

7. All direct expenses relating to the above paid out of pocket shall be reimbursed monthly upon presentation of statement of account.

8. John Garrison shall maintain the agency or representation office of APOA in his residence.

| John Garrison | Edgar Bernal |
|---|---|
| John Garrison | APOA |

Bernal signed the contract on APOA's behalf. On July 15, 1987, Garrison leased property for the facility in Miguel Aleman, Mexico. He obtained the permits and con-

structed the facility. In 1987, a Mexican corporation, "APOMEX," was formed to operate the facility. Garrison became APOMEX's general manager. On July 3, 1988, the first charge went into the plant, and it began producing antimony trioxide.

Garrison worked under the consulting agreement from March 6, 1987, until he was terminated on November 3, 1988. Garrison alleged that the defendants repudiated and breached the contract when they terminated his employment. He sued the defendants, alleging that they owed him back salary, wages, and out-of-pocket expenses in the amount of $78,489.94. He also demanded attorney's fees for trial and appeal in the amount of $50,000.00. The jury found that APOA breached the contract and awarded Garrison $54,470.72 in damages, $18,156.90 in attorney's fees for preparation and trial, and $21,788.28 in attorney's fees for an appeal to the court of appeals. The trial court entered judgment in Garrison's favor, adding on $5,085.09 in prejudgment interest.

By point ten, APOA complains that the trial court erred by overruling its plea in abatement. APOA filed a plea in abatement which stated:

A. Defendants further allege that the subject Consultant Agreement contemplated the formation of a Mexican corporation to operate a Mexican maquiladora plant in the State of Tamaulipas. Once that Mexican corporation, (i.e. Apomex, S.A. de C.V.) was formed, it hired Plaintiff. Therefore, there is a defect of Party Defendant because of the failure to include the corporation Apomex S.A. de C.V., in any claim for monies owed Plaintiff for salary and wages.

B. For the reasons stated in subparagraph A immediately above, this cause of action should be abated until such time as the Plaintiff corrects the defect in the parties Defendant.

Rule 39 of the Texas Rules of Civil Procedure states, in pertinent part:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

▮▮▮ The law is well settled that a party who urges a plea in abatement has the burden of proving by a preponderance of the evidence at the hearing on the plea the facts that are alleged in the plea as grounds for abating and dismissing the plaintiff's case. *Seth v. Meyer*, 730 S.W.2d 884, 885 (Tex.App.—Fort Worth 1987, no writ); *Brazos Elec. Power Coop., Inc. v. Weatherford Indep. School Dist.*, 453 S.W.2d 185, 188 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.). A plea in abatement is sustainable without proof only when the truth of the matters alleged in the defendant's plea in abatement appears on the face of the plaintiff's pleadings. *Lake Country Estates, Inc. v. Toman*, 624 S.W.2d 677, 679 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.); *Brazos*, 453 S.W.2d at 188. A defendant who merely presents his plea in abatement without offering evidence to prove the grounds urged therein, waives the plea unless he can demonstrate that the plaintiff's petition establishes the grounds urged in the plea. *Brazos*, 453 S.W.2d at 189; *Taylor v. United Ass'n of Journeymen*, 337 S.W.2d 421, 425 (Tex.Civ. App.—Fort Worth 1960, writ ref'd n.r.e.). When no evidence is presented at the hearing on the plea in abatement, the plaintiff's petition must be presumed to state the facts pled correctly, and it must be construed in the light most favorable to the plaintiff. *Toman*, 624 S.W.2d at 679; *Brazos*, 453 S.W.2d at 189.

Here, the trial court held a hearing on APOA's plea in abatement and overruled the plea. APOA re-argued the plea on the day of trial, and the trial court again overruled it. On both occasions, APOA did not offer any evidence to prove the allegations in its plea. The face of Garrison's pleadings do not show that APOMEX hired him, agreed to compensate him, or that he looked to APOMEX for compensation. Further, the consultant agreement, attached to Garrison's pleadings, does not contemplate the formation of a Mexican corporation to operate the maquiladora. Thus, APOA waived its plea in abatement. We hold, therefore, that the trial court did not err by overruling APOA's plea in abatement.

By points two through five, APOA complains that the trial court erred by refusing to submit its proposed Special Questions Nos. 2, 3, 6, and 7. A "controlling issue" is one which, if answered favorable to the theory in which it is presented, will sustain a basis for judgment for the proponent of the issue. *Soto v. Southern Life & Health Ins. Co.*, 776 S.W.2d 752, 754 (Tex.App.—Corpus Christi 1989, no writ); *Stone v. Metro Restaurant Supply, Inc.*, 629 S.W.2d 254, 256 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). If evidence and pleadings exist to support the special issues, a trial court's refusal to submit them constitutes reversible error. *Southwestern Bell Tel. Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977); *Chrysler Corp. v. McMorries*, 657 S.W.2d 858, 866 (Tex. App.—Amarillo 1983, no writ); Tex.R.Civ. 277. A trial court has considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974); *4M Linen & Uniform Supply Co. v. W.P. Ballard & Co.*, 793 S.W.2d 320, 326 (Tex.App.—Houston [1st Dist.] 1990, writ denied); Tex. R.Civ. 277. Trial courts are permitted, and even urged, to submit the controlling issues of a case in broad terms in order to simplify the jury's chore. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986);

*Rauscher Pierce Refsnes, Inc. v. Koenig*, 794 S.W.2d 514, 517–18 (Tex.App.—Corpus Christi 1990, writ denied). Rule 277, governing submission to the jury, was amended in 1987 to provide that the trial court shall, "whenever feasible, submit the cause upon broad form questions." Tex.R.Civ. 277.

Special Question No. 2 asked:

Do you find from a preponderance of the evidence that Plaintiff John Garrison breached the Consultant Agreement between Plaintiff John Garrison and Defendant APOA?

"Breach of an Agreement" means the failure, without legal excuse, to perform any promise which forms the whole or part of an agreement.

ANSWER: "Yes" or "No"

 Answer: ____

Special Question No. 3 asked:

If you answered both Question No. 1 and Question No. 2 "Yes," then answer the following question. Otherwise, go to Question No. 4.

Find by a preponderance of the evidence who breached the Consultant Agreement first.

Answer "Plaintiff Garrison" or "Defendant APOA"

ANSWER: ____

A fundamental rule of contract law is that whenever a party to a contract repudiates or commits a material breach, the other party to that contract, at its election, is excused from further performance. *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 20–21 (Tex.App.—Dallas 1988, writ denied); *Corso v. Carr*, 634 S.W.2d 804, 808 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.). Here, no pleadings support the submission of Special Question No. 2. Further, whether Garrison "breached" the consultant agreement was not a controlling issue unless the breach was also found to be material, supporting APOA's defense of material breach. APOA did not submit a special question properly inquiring whether Garrison *materially breached* the agreement. APOA was thus not entitled to submit spe-

cial questions asking merely whether Garrison "breached" the agreement.

 Special Question No. 6 asked: Do you find from [a] preponderance of the evidence that prior to the signing of the Consultant Agreement in question in this case, Plaintiff John Garrison knowingly or wrecklessly [sic] made false representations as to material facts to Defendant APOA or its representatives concerning his knowledge, experience and expertise in the formation, construction, and operation of an antimony fuming facility under the maquiladora program in Mexico, with the intent of inducing Defendant APOA to sign the written Consultant Agreement and that Defendant APOA suffered a pecuniary loss as a direct result of its reliance on the representation?

Answer "Yes" or "No"

ANSWER: ___

The elements of actionable fraud were stated in *Trenholm v. Ratcliff,* 646 S.W.2d 927 (Tex.1983). The elements are as follows:

(1) that a material representation was made; (2) that it was false; (3) that when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury.

*Trenholm,* 646 S.W.2d at 930.

The evidence shows that before Garrison and APOA entered into the consultant agreement, Garrison told Edgar Bernal that he had knowledge, experience, and expertise in setting up a blast furnace and facility. During trial, when Bernal was asked if he would have entered into the consultant agreement with Garrison if Garrison had not made these representations, Bernal said, "I think I would have anyway." This testimony was uncontroverted. In order to avoid a contract for fraud, it is necessary to show that the fraudulent representation was relied upon to the extent that it became a material factor in inducing

the making of the contract and without which it would not have been made. *Glendon Investments, Inc. v. Brooks,* 748 S.W.2d 465, 469 (Tex.App.—Houston [1st Dist.] 1988, writ denied). The trial court properly refused to submit an issue on fraudulent misrepresentation because no evidence existed to show reliance.

 Special Question No. 7 asked: QUESTION NO. 7: Do you find from a preponderance of the evidence that there was a failure of consideration upon which the Consultant Agreement between Plaintiff John Garrison and Defendant APOA was founded, either in whole or in part, in that Plaintiff has failed to do one or more of the following: Obtain a lease with an option to purchase? secure all permits necessary to operate an antimony fuming facility under the Mexican Maquiladora Program? properly erect and construct a working fuming facility? commence operations of a properly functioning antimony fuming facility? submit biweekly [sic] written status reports by telex? present monthly statements of account for all direct expenses?

The term "failure of consideration" as applied to the subject Consultant Agreement means that sufficient consideration for the Agreement was contemplated by the parties at the time the agreement was entered into, but that there has been a non-performance in whole or in part.

Answer "Yes" or "No"

ANSWER: ___

Failure of consideration happens when, because of some supervening cause after an agreement is reached, the promised performance fails. *Matter of Topco, Inc. v. Webb,* 894 F.2d 727, 742 (5th Cir.1990); *Stewart v. U.S. Leasing Corp.,* 702 S.W.2d 288, 290 (Tex.App.—Houston [1st Dist.] 1985, no writ); *O'Shea v. Coronado Transmission Co.,* 656 S.W.2d 557, 563 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.). Here, the acts enumerated in the special question are breaches of contract and do not go to a "supervening cause" which would prevent performance. We hold, therefore, that the trial court did not

err by failing to submit these special questions to the jury.

■ By point seven, APOA complains that the trial court erred in denying its "DEFENDANTS' MOTION TO CORRECT, MODIFY OR REFORM THE JUDGMENT" because "the evidence presented a ceiling concerning attorney's fees awardable on appeal." Special Question No. 3 asked, in pertinent part:

Find from a preponderance of the evidence the reasonable attorney's fees incurred in prosecuting this breach of contract action. Answer each subpart, A through D, in dollars and cents, if any, or none.

. . . . .

B. In the Court of Appeals in the event this case is appealed.
Answer: $21,788.28

In considering a "no evidence," "insufficient evidence," or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960).

Section 38.001 of the Civil Practice & Remedies Code permits recovery of attorney's fees in suits based upon written contracts. *Lyons v. Montgomery,* 701 S.W.2d 641, 644 (Tex.1985); *Hauglum v. Durst,* 769 S.W.2d 646, 652 (Tex.App.—Corpus Christi 1989, no writ). A party who is entitled to recover under a breach of contract claim is also entitled to recover a reasonable attorney's fee. *Praeger v. Wilson,* 721 S.W.2d 597, 601 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.).

■ During the trial of this case, Garrison's counsel, the Hon. Lloyd Seljos, called the Hon. Buck Pettitt as an expert witness. The Hon. Buck Pettitt had been licensed to practice law in Texas since 1970 and said that he practiced civil trial law. He read the Hon. Lloyd Seljos' file in this case and said that a reasonable and necessary fee in this case would be a one-third contingent fee. He also testified that if this case was appealed to the Corpus Christi Court of Appeals, the usual and customary fee, based on a one-third contingency, would be a forty-percent contingent fee interest.

The jury awarded Garrison $54,470.72 in damages. A one-third contingent fee equals $18,156.91. Forty percent of $54,-470.72 equals $21,788.29 for the trial and appeal. Thus, for an appeal to this court, the Hon. Lloyd Seljos would be entitled to an additional $3,631.38 ($21,788.29 − $18,-156.91). This is the maximum amount that the jury was authorized to award under the evidence presented. An appellate court has the duty to correct the amount of attorney's fees awarded if the amount is excessive. *Bradbury v. Scott,* 788 S.W.2d 31, 40 (Tex.App.—Houston [1st Dist.] 1989, writ denied); *Wuagneux Builders, Inc. v. Candlewood Builders, Inc.,* 651 S.W.2d 919, 922 (Tex.App.—Fort Worth 1983, no writ). Therefore, we reform the award of attorney's fees for an appeal to this court by reducing the amount from $21,788.29 to $3,631.38 for the appeal to this Court. The total attorney fees would be 40% of the judgment, i.e. $21,788.29 for trial and appeal.

■ By points eight and nine, APOA complains that the attorney's fees awarded through trial and for appeal are excessive. The jury awarded $18,156.90 in attorney's fees for preparation and trial of this case. The attorney's fees for an appeal to this court have been reduced to $3,631.38. The jury did not award attorney's fees for making or responding to an application for writ of error to the Texas Supreme Court, or for additional work in the event that the application was granted. Factors to be considered in determining the reasonableness of attorney's fees include: the time and labor involved; the nature and complexities of the case; the value of the interest involved; the extent of the responsibilities assumed by the attorney; and the

benefits resulting to the client from the attorney's services. *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.*, 794 S.W.2d 442, 449 (Tex.App.—Corpus Christi 1990, writ denied); *A.H. Belo Corp. v. Southern Methodist Univ.*, 734 S.W.2d 720, 724 (Tex.App.—Dallas 1987, writ denied).

Here, the Hon. Buck Petitt's testimony supported the award of attorney's fees. This case involved a suit for breach of an employment contract against a corporation and its managing director. After trial, the Hon. Lloyd Seljos obtained a favorable verdict in the amount of $54,470.72. We hold, therefore, that the award of attorney's fees as corrected by this Court was reasonable under the circumstances of this case.

■ By point one, APOA complains that the trial court erred in denying its "DEFENDANTS' SECOND MOTION FOR JUDGMENT NON OBSTANTE VEREDICTO" because the evidence establishes, as a matter of law, that John Garrison did not perform his contractual obligations. Challenges to a trial court's refusal to grant a motion for judgment notwithstanding the verdict are to be viewed similarly to legal insufficiency claims. *Remenchik v. Whittington*, 757 S.W.2d 836, 838 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Northwest Mall, Inc. v. Lubri–Lon Int'l, Inc.*, 681 S.W.2d 797, 801 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). The reviewing court can reverse the trial court's refusal to grant a motion for judgment notwithstanding the verdict only if *no evidence* exists to support the jury findings. *Remenchik*, 757 S.W.2d at 838; *Northwest Mall*, 681 S.W.2d at 801–02. *See Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980). In considering a motion for judgment notwithstanding the verdict, an appellate court must view all the evidence in a light most favorable to the jury's verdict and indulge every reasonable intendment in its favor. *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812, 814 (Tex.1979); *U.S. Fire Ins. Co. v. Twin City Concrete, Inc.*, 684 S.W.2d 171, 173 (Tex.App.—Houston [14th Dist.] 1984, no writ).

■ Generally, when a party to a contract seeks to enforce the agreement or to recover damages for breach of the agreement, that party must prove that it has performed all of its own obligations under the contract. *Lake LBJ Mun. Util. Dist. v. Coulson*, 692 S.W.2d 897, 907 (Tex. App.—Austin 1985), *rev'd on other grounds*, 734 S.W.2d 649 (Tex.1987). In a bilateral contract, where promises have been exchanged for an exchange of performances and the contract is executory on both sides, one party's repudiation of a duty to perform, *or a breach of the contract of such materiality indicating an intention to repudiate the contract*, excuses or discharges the other party's remaining obligation to perform. *Glass v. Anderson*, 596 S.W.2d 507, 511 (Tex.1980); *Hampton v. Minton*, 785 S.W.2d 854, 857 (Tex.App.—Austin 1990, writ denied).

■ Garrison testified that he: complied with the property acquisition clause; secured the permits; constructed the facility as directed by the investors; commenced operations according to the parameters and requirements of the investors; and maintained APOA's office in his residence. He reported to Bernal daily, weekly, and bi-weekly. He also testified that he sent Bernal a lot but not all of his expense receipts, and Bernal paid them. At the request of Bernal's accountant, Garrison turned over the remaining unreimbursed receipts. Bernal's accountant, along with Garrison and another accountant, performed an accounting which reflected that Bernal owed Garrison $31,440.72 in unreimbursed out-of-pocket expenses and $23,030.00 in unpaid salary.

Even though Garrison did not turn in all of his out-of-pocket expenses each month and did not report to Bernal on a bi-weekly basis, these actions were not a material breach of the consultant agreement indicating his intention to repudiate. We hold, therefore, that the trial court did not err by denying APOA's second motion for judgment non obstante veredicto.

By point six, APOA complains that the attorney's fees award must be reversed because Garrison cannot prevail on his

breach of contract claims. Due to our disposition of points one and two, we need not discuss this point. Tex.R.App.P. 90(a).

The judgment is AFFIRMED as reformed.