The STATE of Texas, The Texas Department of Public Safety, and Michael Wayne Gibson, Individually and In His Official Capacity As A Texas Department of Public Safety Officer, Appellants,

v.

Hector SAENZ and Gloria Saenz, Appellees.

No. 13–96–242–CV.

Court of Appeals of Texas, Corpus Christi.

April 16, 1998.

---

Laurie Rayson Eiserloh, Assistant Attorney General, Austin, for Appellants.

Thomas J. Henry, Joe Brad Brock, Corpus Christi, for Appellees.

Before SEERDEN, Chief Justice, FEDERICO G. HINOJOSA, Jr., and CHAVEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an official immunity case. Appellees, Hector Saenz and Gloria Saenz, sued the State, the Texas Department of Public Safety ("DPS"), and Michael Wayne Gibson, individually and in his official capacity as a DPS officer (collectively "appellants"), for injuries and damages resulting from a traffic accident. The parties stipulated that Trooper Gibson was acting within the scope of his employment and performing discretionary duties with respect to the conduct complained of by appellees. The jury found for appellees, and the trial court signed a judgment against Gibson, individually and in his official capacity as a DPS officer. By six points of error,[1] appellants contend the trial court erred (1) by denying their motions for judgment *non obstante veredicto* and for new trial, and (2) by denying their requested jury charge definitions and instructions. In addition, appellants complain, and appellees agree, that the trial court erred by not ruling on an Agreed Motion to Modify the Judgment because the judgment was rendered simultaneously against the State and its employee. We affirm in part and reverse and render in part.

At approximately 3:45 p.m. on May 18, 1992, Gibson was participating in a task force operation to slow traffic around factories in the Port Lavaca area. Gibson was patrolling Highway 35 between Port Lavaca and Tivoli. At the same time, appellees were traveling in the same direction on the highway. Highway 35 is a two-lane highway with an improved shoulder, and the speed limit is 55 m.p.h.

As Gibson was driving along, monitoring the speed of traffic around him, he noticed a vehicle going the opposite direction, moving

---

1. Although appellants' brief reflects seven points of error, appellants withdrew their fifth point of error. We will address the points as 1–4, 6, and 7.

at approximately 65 m.p.h. Because traffic in front of the speeding vehicle was moving at the speed limit, Gibson believed an emergency situation existed as a collision could occur unless the speeder was stopped. The officer slowed down and pulled onto the shoulder to wait for traffic behind him to clear. After checking his mirrors and looking over his shoulder, Gibson determined that traffic would be clear when a blue van passed his location. Once the van passed, the officer again checked traffic, attempted to execute a U-turn, and collided with the vehicle driven by Mrs. Saenz.

Appellees sued for physical pain and suffering, mental anguish, physical impairment, medical care, loss of earning capacity, cost of repairs, and loss of use of their vehicle. Appellants relied on the affirmative defense of official immunity.[2] At trial, the parties stipulated that Gibson was performing discretionary duties within the scope of his employment. Appellants moved for a directed verdict on the basis of qualified immunity and emergency situation, but the trial court overruled the motion. The jury found that Gibson was negligent and not acting in good faith at the time of the accident. The trial court signed a judgment against Gibson, individually and in his official capacity as a DPS officer. The parties filed an Agreed Motion to Modify the Judgment, but the trial court did not rule on it. Appellants' motions for new trial and judgment *non obstante veredicto* were overruled.

By their first point of error, appellants complain that the trial court erred in overruling their motion for judgment *non obstante veredicto* because they proved conclusively as a matter of law that Gibson was acting in good faith and the jury's answer to Question No. 3 should be disregarded. By their second point of error, appellants contend the trial court erred in overruling their motion for new trial because the jury's answer to

Question No. 3 was against the great weight and preponderance of the evidence.

### Standards of Review

 Because appellants pleaded the affirmative defense of official immunity, they had the burden of proof on all the elements of the defense. *Perry v. Texas A & I Univ.,* 737 S.W.2d 106, 110 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Challenges to a trial court's refusal to grant a motion for judgment *non obstante veredicto* are to be viewed similarly to legal insufficiency claims. *Bernal v. Garrison,* 818 S.W.2d 79, 86 (Tex. App.—Corpus Christi 1991, writ denied); *Remenchik v. Whittington,* 757 S.W.2d 836, 838 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Northwest Mall, Inc. v. Lubri–Lon Int'l, Inc.,* 681 S.W.2d 797, 801 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). When considering a motion for judgment *non obstante veredicto,* an appellate court must view all the evidence in the light most favorable to the jury's verdict and indulge every reasonable intendment in its favor. *Dodd v. Texas Farm Prod. Co.,* 576 S.W.2d 812, 814 (Tex.1979); *Bernal,* 818 S.W.2d at 86.

 When we decide a legal sufficiency point on which the complaining party had the burden of proof, we conduct a two part analysis. *Clements v. Corbin,* 891 S.W.2d 276, 277 (Tex.App.—Corpus Christi 1994, writ denied). We first examine the record for evidence supporting the finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989); *Clements,* 891 S.W.2d at 277–78. If there is no evidence supporting the finding, then we examine the record to determine whether the contrary proposition is established as a matter of law. *Sterner,* 767 S.W.2d at 690; *Clements,* 891 S.W.2d at 277–78.

 When a party with the burden of proof complains that a jury's finding is

---

2. Although Texas courts use the terms "qualified" and "official" immunity interchangeably, *see, e.g., Travis v. City of Mesquite,* 830 S.W.2d 94, 100 n. 2 (Tex.1992) (Cornyn, J. concurring), recent cases discussing immunity defenses against both state and federal claims use the terms separately to distinguish between the standards for federal (qualified) and state (official) immunity tests. *See, e.g., Emerson v. Borland,* 927 S.W.2d 709, 719, 721 (Tex.App.—Austin 1996, writ denied); *Rhodes v. Torres,* 901 S.W.2d 794, 797, 798 (Tex.App.—Houston [14th Dist.] 1995, no writ).

**914**

against the great weight and preponderance of the evidence, we examine the entire record and consider all the evidence to see if there is sufficient evidence to support the jury's verdict. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *DeLeon v. Pickens,* 933 S.W.2d 286, 289 (Tex.App.—Corpus Christi 1996, writ denied). We will reverse the judgment only if the verdict is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if it shocks the conscience. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *DeLeon,* 933 S.W.2d at 289. This Court is not a fact-finder, however, and consequently we do not pass judgment upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even when there exists conflicting testimony which could support a different conclusion. *Cain,* 709 S.W.2d at 176; *DeLeon,* 933 S.W.2d at 289.

### *Immunity*

■ Appellants pleaded and offered evidence on the affirmative defense of official immunity. A governmental employee, such as Gibson, has official immunity for the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex. 1997); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). If the employee is protected from liability under the immunity doctrine, then the governmental entity is also immune from liability. *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993). Because the parties stipulated that Gibson was performing a discretionary duty within the scope of his employment, only the good faith element of his affirmative defense was in issue.

■ Good faith in official immunity cases must be measured against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind. *Wadewitz,* 951 S.W.2d at 466; *Chambers,* 883 S.W.2d at 656. Good faith depends on how a reasonably prudent officer could have assessed both the need to which an officer responds and the risks of the officer's course

of action, based on the officer's perception of the facts at the time of the event. *Wadewitz,* 951 S.W.2d at 467; see *Chambers,* 883 S.W.2d at 656.

The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer.

*Wadewitz,* 951 S.W.2d at 467. Without considering both prongs of the good faith balancing test, there is no basis for concluding that a reasonable officer could or could not have acted in a certain manner. *Id.*

### *Application*

■ We begin with the legal sufficiency analysis and look first for some evidence to support the jury's answer to Question No. 3, that Gibson was not acting in good faith at the time of the accident. Gibson testified that he did not perceive a risk to other motorists by his actions.

Corporal Earl Petropoulous of the DPS was assigned to investigate the accident. In his written report, Petropoulous determined that Gibson began the U-turn when it was unsafe. During the trial, Petropoulous testified that it is not reasonable for an officer to make a U-turn under unsafe conditions. According to Petropoulous, a reasonably prudent officer would have believed there was a need to stop a vehicle going 10 m.p.h. over the posted speed limit. However, he de-

scribed such a stop as routine and explained that he had made several such stops on the same day under exactly the same circumstances. Petropoulous said that a reasonably prudent officer would be more observant of traffic when pursuing a speeder and would see traffic coming from both directions with a prudent look out. Given that the road was flat for a mile in either direction and weather conditions were clear, a reasonably prudent officer would have been able to observe traffic with no obstructions. Petropoulous opined that Gibson was not observant enough under the circumstances. He also testified that the public was always at risk when an officer decides to pursue a speeder.

The jury could have determined from the evidence that a reasonably prudent officer could believe there was a need to pursue the speeder but, unlike Gibson, would balance the risk to the public by being more observant of other traffic. We conclude there is some evidence to support the jury's answer to Question No. 3.

Because some evidence exists to support the jury's finding, we need not examine the record to determine if appellants established good faith as a matter of law. We hold the evidence is legally sufficient to support the jury's finding. Appellants' first point of error is overruled.

After reviewing the entire record we also conclude the jury's finding is not against the great weight and preponderance of the evidence of good faith. Gibson and Petropoulous each testified that a reasonably prudent officer would have believed there was a need to stop a person driving 10 m.p.h. over the legal limit. They also agreed that Gibson's conduct prior to the U-turn was appropriate. However, the troopers did not agree on the nature of the stop. Gibson believed he was confronted with an emergency while Petropoulous described the stop as routine. Nevertheless, some of Gibson's testimony seems to support the view that the stop was routine. Gibson testified that he observed the speeder until he was clearly able to identify the vehicle and that once he completed the turn, he

would have had little difficulty in stopping the car. The troopers also disagreed about the risk to the public, with Petropoulous believing there is always risk in a pursuit situation and Gibson saying he perceived no risk to the public. Petropoulous also believed that, in the situation, a more prudent look out was necessary than was made by Gibson.

Appellants did not clearly prove that reasonably prudent officers would perceive the seriousness of the crime, or that there was an immediate need to act, in the same manner as Gibson. In addition, appellants did not conclusively establish the risk prong of the good faith test. There is no overwhelming evidence that the nature and severity of the risk to the public, coupled with the likelihood of harm occurring, would permit a reasonably prudent officer in this situation to believe the need to make a traffic stop outweighed public safety concerns. Moreover, there is contradictory evidence about whether the harm should have been apparent to Gibson. For these reasons, we hold the evidence to be factually sufficient to support the jury's finding. Accordingly, we overrule appellants' second point of error.

By their seventh point of error, appellants complain the trial court erred in overruling their amended motion for judgment *non obstante veredicto* because the evidence conclusively established as a matter of law that Gibson was acting in an emergency situation. In support of their position, appellants rely on section 101.055(2) of the Texas Civil Practice and Remedies Code.

 Section 101.055(2) provides immunity for a governmental "employee while responding to an emergency call or reacting to an emergency situation...." TEX.CIV.PRAC. & REM.CODE ANN. § 101.055(2) (Vernon 1997).[3] To successfully rely on this section, appellants had to establish that Gibson was indeed responding to an emergency situation. However, as discussed under the previous points of error, there was some evidence that Gibson was responding to a routine traffic

3. Amendments to this section, effective September 1, 1995, are not relevant to our discussion of

this point of error.

stop and not an emergency situation. Because there was some evidence that Gibson was not acting in an emergency situation, we hold the trial court did not err in overruling the motion for judgment *non obstante veredicto*. Appellants' seventh point of error is overruled.

### Requested Instructions

Appellants raise two points of error complaining of the trial court's refusal to include their requested instructions in the jury charge. By their third point of error, appellants contend the trial court erred by not submitting their definition of "good faith" to the jury. By their sixth point of error, appellants contend the trial court erred by refusing to include a jury instruction on "emergency situation."

▮ A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R.CIV.P. 277. The trial court must submit instructions and definitions which are presented by the pleadings and evidence. TEX. R.CIV.P. 278. These rules afford the trial court considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. *See State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex.1997); *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex.1995); *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974).

For an instruction to be proper, it must (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and the evidence. *See* TEX.R.CIV.P. 278; *European Crossroads' Shopping Ctr., Ltd. v. Criswell*, 910 S.W.2d 45, 54 (Tex.App.—Dallas 1995, writ denied); *First State Bank & Trust Co. v. George*, 519 S.W.2d 198, 207 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.). An instruction that misstates the law or misleads the jury is improper. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 89 (Tex. 1973); *European Crossroads'*, 910 S.W.2d at 54.

Appellants asked the trial court to include the following instruction in the jury charge:

"GOOD FAITH" means that a reasonable individual could have believed his conduct to be *proper in light of the information possessed by the individual at the time the* conduct occurred. An [i]ndividual does not act in GOOD FAITH only if no reasonable person in the individual's position could have thought that the facts were such that they justified his acts.

The trial court denied appellants request and instructed the jury as follows:

An officer acts in GOOD FAITH if a reasonable and prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed the clear risk of harm to the public.

The instruction submitted by the trial court is the test set forth in *Chambers* when a pursuit is at issue. 883 S.W.2d at 656. Although *Chambers* does speak of a "no reasonable person" standard, this standard is relevant only in the context of a summary judgment. The supreme court explained that a non-movant can defeat the grant of summary judgment on a claim that reasonably prudent officers would believe as the movant believed, by showing that no reasonably prudent officer could have so believed. *Chambers*, 883 S.W.2d at 657. The Chambers did not, as appellants appear to contend by the wording of their instruction, conclusively win on the issue of good faith, but instead survived summary judgment by creating a fact issue for the jury to determine.

▮ Because the trial court's instruction to the jury on "good faith" was proper and because appellants' requested instruction on "good faith" was not an accurate statement of the law, we conclude the trial court did not abuse its discretion by refusing to include appellants' requested instruction in the jury charge. Appellants' third point of error is overruled.

▮ Appellants also requested that the trial court submit the following instruction on emergency situation:

You are instructed that a Department of Public Safety Trooper may not be found liable for his action while responding to an emergency call or reacting to an emergen-

cy situation if the action is in compliance with the law and ordinances applicable to emergency action.

While this instruction accurately tracks a portion of section 101.055(2) of the civil practice and remedies code, it fails to instruct the jury on the laws that apply in an emergency situation. Specifically, the jury would not have been informed that an officer in pursuit must "exercise due regard for the safety of all persons." TEX.TRANSP.CODE ANN. § 545.156(b) (Vernon Pamph.1997) (formerly TEX.REV.CIV.STAT.ANN. art. 6701d, § 75(b)); [4] see Chambers, 883 S.W.2d at 653; Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992).

Because appellants' requested instruction on "emergency situation" provided an incomplete statement of the law, we hold the trial court did not err by refusing to include it in the jury charge. Appellants sixth point of error is overruled.

By their third point of error, appellants contend, and appellees agree, that the trial court erred by not ruling on the Agreed Motion to Modify the Judgment.

 The trial court signed a judgment against Gibson, individually and in his official capacity as a DPS officer. A suit against a government official in his official capacity seeks to impose liability only upon the governmental entity the official represents, and any judgment in this type of suit is collectible only against the governmental entity, not against the official's personal assets. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, (1985); Morris v. Copeland, 944 S.W.2d 696, 698 (Tex.App.—Corpus Christi 1997, no writ). Section 101.106 of the civil practices and remedies code bars the rendition of judgment against an employee concurrently with rendition of judgment against the governmental employer. TEX.CIV.PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997); Thomas v. Oldham, 895 S.W.2d 352, 355 (Tex.1995).

The agreed motion asked the trial court to modify the judgment so that it would only be against the State and DPS. We agree with the parties that the trial court erred by not ruling on the agreed motion. The trial court should have granted the motion and modified the judgment so that it would only be against the State and DPS. We sustain appellants' third point of error.

We reverse the trial court's judgment against Michael Wayne Gibson, individually. We render judgment that appellees take nothing from Michael Wayne Gibson, individually. We affirm the judgment of the trial court against the State of Texas and the Texas Department of Public Safety.

---

**4.** TEX.REV.CIV.STAT.ANN. art. 6701d, § 75(b) was applicable at the time of the accident. Recodification of this provision did not make substantive changes in the law.