Dalton Ray CLEMENTS, Appellant,

v.

A.F. CORBIN, et al., Appellees.

No. 13–93–222–CV.

Court of Appeals of Texas,
Corpus Christi.

July 29, 1994.

Rehearing Overruled Dec. 8, 1994.

O.F. Jones, III, Victoria, for appellant.

John Griffin, Jr., Houston, Marek & Griffin, Kemper Williams, Jr., Victoria, W.T. McNeil, Vance & McNeil, Edna, Harold Kennedy, Austin, Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, Robert L. Lemens, Asst. Atty. Gen., Jonathan W. Needle, Austin, for appellees.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

DORSEY, Justice.

Dalton Ray Clements appeals a take-nothing judgment on his claim of adverse possession of approximately 80 acres in La Ward. Clements claims that the trial court erred in failing to grant his motion for judgment non obstante veredicto because he established all of the elements of adverse possession as a matter of law, or alternatively that the jury's verdict is against the great weight and preponderance of the evidence. Additionally, Clements contends that the award of attorney's fees to the plaintiff below is excessive. We affirm.

This trespass to try title suit was filed April 7, 1989, by a number of plaintiffs seeking title to and possession of property and attorney's fees in the northeast quarter of the town of La Ward in Jackson County. All of the plaintiffs hold record legal title to property contained within the 80 acres claimed by Clements.

Clements filed a general denial, a plea of not guilty, and claimed the affirmative defense of the ten year statute of limitations. Clements also counterclaimed and filed a third party petition on December 21, 1990, adding additional owners of the remaining lots in the 80 acre tract, both known and unknown. At trial, Clements stipulated that the original plaintiffs held legal title to the property he claimed and his claim to ownership was based solely on his adverse possession of those tracts.

Appellant's first, second, and third points of error claim that the jury's answers to questions one and two[1] are supported by "no evidence" because the evidence conclusively demonstrates the opposite or are against the great weight and preponderance of the evidence. In order to decide a legal sufficiency point on which the complaining party had the burden of proof, as here, we conduct a two part analysis. First, we must examine the record for evidence supporting the failure to

---

1. The charge asked the jury to determine the following:

    Question No. 1: Did Dalton Ray Clements maintain exclusive continuous adverse possession of the 80 acre tract of land for ten years prior to April 24, 1989?

    The jury answered "no."

    Question No. 2: Did Dalton Ray Clements maintain exclusive continuous adverse possession of the 80 acre tract of land for ten years prior to December 19, 1990?

    The jury answered "no."

find while ignoring all evidence to the contrary. If there is no evidence supporting the failure to find, then we examine the record to determine whether the proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

Adverse possession as defined in section 16.021 of the Civil Practices and Remedies Code is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person."[2] A person may acquire limitation title to property if the property is held in peaceable and adverse possession by one who cultivates, uses, or enjoys the property. § 16.026(a). A party seeking to establish title by adverse possession has the burden to prove every fact necessary to that claim by clear and satisfactory evidence. *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781, 787 (1954). This admonishment requires a court to exercise great caution in weighing the evidence although it does not replace the preponderance of the evidence standard. *Rhodes v. Cahill*, 802 S.W.2d 643, 644 n. 2 (Tex.1990). To establish title through adverse possession, "the possession must be of such character as to indicate *unmistakably* an assertion of a claim of *exclusive* ownership in the occupant." *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925, 927 (1948) (emphasis in original).

The property appellant claims is eighty acres of city lots platted in the 1920's and 30's in La Ward. Many of the record owners live elsewhere. The land remained undeveloped and was commonly used to graze cattle and raise vegetables by persons other than the owners. No one prior to Clements made any claim of ownership adverse to the absent landowners.

Clements filed his third-party petition December 21, 1990, against the unknown owners who did not sue as plaintiffs. That petition also counterclaimed against the original plaintiffs. For Clements to prevail on either his counterclaim or his third party action he

had to have been in possession by at least December 21, 1980 and that possession had to be open and notorious enough to raise a presumption of notice to an owner of the property for the ten year period.

Clements and his father, Ray Clements, testified that Ray went on the land in early 1978 and began running cattle. The land had previously been used for grazing cattle by J.W. Lee who had the permission of some of the owners. Clements testified that he and his father repaired existing fences, cleared the heavier brush, and kept cattle on the land for about a year. After a year, Clements's father abandoned the project to Clements. Clements completed the clearing of the land over a period of a year and began farming the property in 1980.

Mrs. J.W. Lee testified that she had lived in La Ward for 48 years, that her husband died on March 3, 1978, that she continued to live in La Ward for four years after he died, and that her son died on March 10, 1979. Lee kept cattle on the city lots and built portions of a fence to keep the cattle on that land. Mrs. Lee said they never claimed that the city lots belonged to them and they gave disclaimers to any owner who questioned their intentions. For some years up until a year before her husband died, no one else used the eighty acres which was referred to as the Lee pasture. Mrs. Lee testified that Ray Clements approached her about putting cattle into that pasture and she said it was all right with her. She was not aware that either Ray or Dalton Clements was claiming ownership of the city lots.

Mrs. Lee testified that her husband erected part of the fence but other parts predated his use of the land. Clements bought her interest in the fencing around the property on April 25, 1979. Mrs. Lee was not sure when Clements came on the land, she did not remember seeing him on the land before she sold him the fence. She did not see any "posted signs."

Mrs. Lee said that her husband sold his cattle to William Walpole about a year before Lee died and that Walpole ran cattle on the

---

**2.** Tex.Civ.Prac & Rem.Code Ann § 16.021 (Vernon 1986). All additional code references are to this code unless otherwise identified.

land before Clements. She didn't know whether Walpole owned any portion of the 80 acres.

Julia Walpole testified that there was a lease agreement between her husband, William Walpole, and J.W. Lee for the period May 12, 1977 through March 3, 1978. She did not know whether her husband kept cattle on the property during that period. She was sure that Clements was not using the property before Lee's death.

■ The only evidence that either Ray or Dalton Clements used the 80 acres in 1978 came from their own testimony. No one else saw any "posted" signs or other evidence that they were on the land in 1978. Clements claims he began farming the land in 1980. Cultivating the land continuously over a ten year period is generally sufficient to establish open, notorious, and hostile possession. *De Alonzo v. Solis*, 709 S.W.2d 690, 693 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.).

Clements claimed that he prepared for planting in 1979, planted a crop in 1980, and farmed the property continually through 1990. He testified that he applied for and received federal farm benefits through the Agricultural Stabilization and Conservation Service beginning in 1980 and that he represented himself as the owner of the property to that agency.

Tillman Hunt testified as the deacon of the La Ward Baptist Church, one of the plaintiffs, and as a fifty-two year La Ward resident. In 1990, he was also the mayor of La Ward. In 1988 when La Ward was making plans for a new sewer system Hunt learned for the first time that Clements was claiming the 80 acres. Up until that time, Hunt believed that Clements was making the same use of the property as other members of the community. Hunt testified that the fences on the tract were built by various adjacent land owners at different times and for various purposes. Hunt saw a bulldozer on the land sometime in 1980 or 1981. At the time he saw it, no one was operating it. Hunt did not recall seeing any "posted" or Farm Bureau signs on the property earlier than 1988. Since 1979, he did not see anyone on the property other than a man patching the

fence. He was unaware of anyone running cattle or farming the property as was Mrs. Lee, Clements's immediate neighbor.

■ Grazing cattle will not support a claim of adverse possession unless the land is designedly fenced. *Orsborn*, 267 S.W.2d at 785; *Rhodes*, 802 S.W.2d at 646. The evidence is that Clements repaired and maintained existing fences. However, the existence of a fence and the grazing of cattle does not compel a finding of adverse possession as a matter of law.

It is well settled, that where a party relies upon naked possession alone as the foundation for his adverse possession claim, it must be such an actual occupancy as the law recognizes as sufficient, if persisted in for a long enough period of time, to cut off the true owner's right of recovery.

It has been said that such possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of ownership in the occupant.

*Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) (quoting *Satterwhite v. Rosser*, 61 Tex. 166 (1884)).

Clements's proof of cultivation for ten years before he filed suit for title in December 1990 is controverted. Given the history of the common usage of the town tracts by Lee, Walpole, and others, the jury was justified in failing to find Clement's possession sufficiently visible, notorious and hostile to put the true owners on notice of his claim to the land. Points one and two are overruled on the issue of adverse possession.

■ Appellant also contends by point one that he is entitled to title and possession against the third-party defendants based on his prior possession of the land.

■ In a trespass to try title action, the plaintiff must rely on the strength of his own title, and not defects in title of the defendant. *Hejl v. Wirth*, 161 Tex. 609, 343 S.W.2d 226 (1961). The plaintiff may recover by proving (1) a regular chain of conveyances from the sovereign, (2) a superior title out of a com-

**280**

mon source, (3) title by limitations, or (4) prior possession, and that the prior possession had not been abandoned. *Land v. Turner*, 377 S.W.2d 181, 183 (Tex.1964).

■■■■ The doctrine of prior possession is that possession of land carries with it the presumption of fee title in the one possessing it. *Reiter v. Coastal States Gas Producing Co.*, 382 S.W.2d 243, 249 (Tex.1964) (quoting *Bradshaw v. Ashley*, 180 U.S. 59, 21 S.Ct. 297, 45 L.Ed. 423 (1901)). The doctrine is based on "the theory that one in possession should not be disturbed unless it be by one having a better title." *Id.* at 251. Although prior possession is sufficient to authorize one in possession to maintain suit for title against a trespasser, "proof of title in the defendant unquestionably operates to rebut the inference of ownership arising from plaintiff's possession." *Id.* at 250.

Clements stipulated record title in the plaintiffs below; he did not stipulate title in the third party defendants. However, in Clements's First Amended Counterclaim and Third Party petition, he assumed the position of a plaintiff in a trespass to try title action. His basis for title was one of limitations by adverse possession. He lists the third party defendants and asserts that he is in peaceable adverse possession of the 80 acres and that "[r]ecord title to such premises lies in the names of known and unknown other owners...."

■■■■ Statements in pleadings constitute judicial admissions. *Mendoza v. Fidelity & Guaranty Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980); *Thompson v. Thompson*, 827 S.W.2d 563, 566 (Tex.App.— Corpus Christi 1992, writ denied). A judicial admission relieves the opposing party from having to prove the admitted fact and precludes the party making the admission from introducing contrary evidence. *Mendoza*, 606 S.W.2d at 694. Clements may not rely on his prior possession of the premises while admitting record title in the defendants. Point one is overruled on the issue of prior possession.

■■■■ By point three, appellant complains that the jury's answers to questions one and two are against the great weight and preponderance of the evidence. We consider and weigh all of the evidence in the case and set aside the verdict and remand for a new trial if the verdict is against the weight and preponderance of the evidence and is manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952).

Clements's evidence of the date that he went on the land was controverted by the testimony of Mrs. Lee and Hunt, both neighbors. Neither could state the date but both were certain it was not as early as 1978. Neither Lee nor Hunt were aware of the extent of Clements's activities and claims until 1988. Although Clements asserted that he told the prior mayor of La Ward in 1980 that he claimed ownership of the property; she did not testify. He claimed to have filed a form with the agriculture service in which he claimed ownership of the property, but that document was not introduced into evidence. Clements claimed that he posted the property and put up a Farm Bureau sign before 1980 but no other witness claims to have seen the sign until the mid–1980's. Clements claims to have farmed the property continuously from 1980 through 1990 but produced no independent confirmation of that claim. Clements did not pay taxes on the property prior to 1990. Additionally, he filed a tax form with Jackson County in which he did not list the 80 acres as property he owned.

The jury is the sole judge of the weight and credibility of the witnesses; they must resolve any conflicts in the evidence. *Walter Baxter Seed Co. v. Rivera*, 677 S.W.2d 241, 244 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The jury is not compelled to believe even uncontradicted evidence that is suspicious or comes from an interested or biased source. *Medrano v. Gleinser*, 769 S.W.2d 687, 689 (Tex.App.—Corpus Christi 1989, no writ).

The issue of adverse possession was contested, the jury resolved that contest in favor of the plaintiffs and third party defendants. We cannot say that the jury's verdict is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Point three is overruled.

 By points four and five appellant contends that the award of attorney's fees to appellees is improper because the amount is excessive and because the award is not segregated between the parties who are entitled to fees and those who are not. The judgment awarded $29,100 in attorney's fees through trial, $2000 for a response to Clements's motion for new trial if filed, $5000 to respond to Clements's appeal to the Court of Appeals, if any, and additional fees for appeal to the Supreme Court.

A prevailing party in a suit for possession of land between the record title holder and one claiming by adverse possession may be entitled to attorney's fees. § 16.034(a). To be so entitled, a demand for possession must be given by registered mail at least ten days prior to suit. § 16.034(b).

Several, but not all, of the original plaintiffs gave the statutory notice prior to filing suit. All of the plaintiffs were represented by the same law firm. The plaintiffs were also made counterdefendants by Clements. The legal issues and interests of all the plaintiffs were identical; the vast majority of the work to be done was identical. The only savings to be obtained by segregating the fees were the amounts charged to respond to written discovery by each of the plaintiffs who did not give notice.

The evidence of fees consisted of the testimony of counsel for the plaintiffs, a board certified civil trial lawyer, who testified that his firm had spent three years and 291 hours preparing this case, that his hourly rate was $100 and that the work done was reasonable and necessary. None of his testimony was controverted. Cross-examination consisted of an inquiry regarding the segregation of time by client.

 The burden of proof on attorney's fees is on the party seeking to recover the fees. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991). The general rule is that the one seeking attorney's fees must segregate the claims justifying the fees from those that do not, and present evidence only as to those in which fees may be awarded. *Stone v. Lawyers Title Ins. Corp.*, 537 S.W.2d 55, 63–64 (Tex.Civ.App.—Corpus Christi 1976), *rev'd in part on other grounds*, 554 S.W.2d 183 (Tex.1977); *see Stewart Title*, 822 S.W.2d at 10–11 (must segregate between settling defendants and defendants at trial). An exception is when the fees incurred are "in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Id.* at 11 (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied)). Based on our review of the record, this is one of those circumstances. We overrule points four and five.

The judgment is AFFIRMED.