Opinion filed October 27,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00050-CV

                                                    __________

 

                      TEON
MANAGEMENT, LLC AND REPUBLIC

OIL & GAS COMPANY, Appellants

 

V.

 

TURQUOISE BAY CORPORATION

D/B/A BAY OPERATORS ET AL., Appellees



 

                                   On
Appeal from the 238th District Court

                                                          Midland
County, Texas

                                                   Trial
Court Cause No. CV45986

 



 

O
P I N I O N   O N   M O T I O N   F O R   R E H E A R I N G

On
original submission, we held that the trial court committed reversible error by
failing to render a take-nothing judgment in trespass to try title against
Turquoise Bay Corporation d/b/a Bay Operators et al.[1]
based on Turquoise Bay’s judicial admission of title in the opposing parties. 
Turquoise Bay filed a motion for rehearing, claiming in part that any judicial
admission it had made did not admit better title in the opposing parties
sufficient to defeat its trespass to try title action.  We grant the motion for
rehearing, withdraw our opinion and judgment dated April 7, 2011, and
substitute the following.

Turquoise
Bay filed suit against Teon Management, LLC, et al.[2]
seeking, among other things, a declaratory judgment that seven oil and gas
leases had not terminated and that Turquoise Bay was the operator of four wells
located on those leases.  Teon Management and Republic Oil & Gas Company
filed a counterclaim asking the court to declare that the leases had terminated
and that Turquoise Bay was a bad faith trespasser.  They also requested an
accounting and damages.  The jury answered several questions favorably for
Turquoise Bay, and the trial court entered a declaratory judgment that the
leases were still in effect as to specifically described lands but had
otherwise terminated, that Turquoise Bay was not a trespasser but was the
proper operator of three wells, and that Turquoise Bay was entitled to the
suspended production payments.  The trial court also awarded Turquoise Bay its
attorney’s fees.  We affirm in part and reverse and render in part.

I.  Background Facts

This
suit arises out of four wells drilled on lands covered by seven leases.  The
wells are the Nichols No. 2, the Nichols No. 3, the Elkin-Nichols Unit No. 1-1,
and the Elkin-Nichols Unit No. 2-1.[3]  
In 2006, they were operated by McFarland & Scobey.  McFarland & Scobey
filed for bankruptcy on October 22, 2006, and the Texas Railroad Commission
shut in all four wells on December 14, 2006.  The working interest owners
selected Turquoise Bay as the new operator.  It commenced operations, and
production resumed on March 8, 2007.  Meanwhile, in February, Teon Management
and Republic Oil & Gas Company secured new leases covering the four wells.

Turquoise
Bay applied with the Railroad Commission to become the operator.  Teon
Management contested its application.  Because of the controversy, the production
purchasers placed all revenue from the four wells in suspense.  Turquoise Bay subsequently
filed suit against Teon Management and Republic Oil & Gas Company seeking a
declaratory judgment that Turquoise Bay was a valid operator and not a
trespasser.  Eventually, all royalty, overriding royalty, and working interest
owners were joined as parties.

The
jury found that Turquoise Bay timely commenced reworking operations on three
wells:  the Nichols No. 2, the Nichols No. 3, and the Elkin-Nichols Unit No.
1-1.  The trial court did not submit an issue on the Elkin-Nichols Unit No. 2-1
well, finding as a matter of law that the leases covering that well had
terminated with respect to the land allocated to it.  The trial court entered a
declaratory judgment holding that the leases covering the Nichols No. 2, the Nichols
No. 3, and the Elkin-Nichols Unit No. 1-1 were valid as to the proration units
attributable to those three wells; that two other leases were valid as to all
lands covered by them; that Turquoise Bay was not a trespasser as to the three
wells; and that the leases covering the proration unit attributable to the
Elkin-Nichols Unit No. 2-1 well had terminated.  The trial court also awarded
Turquoise Bay its attorney’s fees, and it authorized the purchasers to release
all suspended funds to Turquoise Bay.  Teon Management and Republic Oil & Gas
Company filed a notice of appeal.[4]
 The remaining defendants did not.

II.  Issues

Teon Management challenges the trial court’s judgment with
six issues.  Teon Management argues first that, because Turquoise Bay’s suit
was primarily one to determine title to land, it was required to file a
trespass to try title action rather than a suit for declaratory judgment.  In
Issues Two and Five, Teon Management contends that the trial court erred by
awarding attorney’s fees or, alternatively, requests a remand for further consideration
of their award.  In Issues Three and Four, it challenges the sufficiency of the
evidence to support specific jury findings.  Finally, in Issue Six, Teon
Management contends that it is entitled to the revenue attributable to
production from the disputed interests.

III. 
Trespass to Try Title

The
first question we must address is whether it was appropriate for Turquoise Bay
to prosecute this as a declaratory judgment action rather than as a trespass to
try title suit.  Teon Management filed special exceptions challenging the
propriety of a declaratory judgment action, and it filed a motion for judgment
NOV asking the court to disregard the jury’s answers because Turquoise Bay
failed to plead or prove a trespass to try title claim.  The trial court denied
both motions.

Teon
Management argues that the trial court erred because this suit was one to
determine title to land.  Turquoise Bay responds that the suit was not, in
substance, a trespass to try title action and, therefore, that a declaratory
judgment action was appropriate.  Both causes of action are statutory
creations. Tex. Prop. Code Ann. §
22.001(a) (West 2000) provides: “A trespass to try title action is the method
of determining title to lands, tenements, or other real property.”  The
prevailing party’s remedy is title to, and possession of, the real property
interest at issue.  Porretto v. Patterson, 251 S.W.3d 701, 708 (Tex.
App.—Houston [1st Dist.] 2007, no pet.).  Conversely, Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008)
allows:

A person interested under a deed, . . . written
contract, or other writings constituting a contract . . . may have determined
any question of construction or validity arising under the instrument, . . .
and obtain a declaration of rights, status or other legal relations thereunder.

            There
are procedural differences between the two causes of action.  One of the most
important is the availability of attorney’s fees.  Trial courts have the
authority to award attorney’s fees in declaratory judgment actions.  Tex. Civ. Prac. & Rem. Code Ann. §
37.002(a) (West 2008) (courts may award costs and reasonable and necessary
attorney’s fees as are equitable and just).  They do not in trespass to try
title suits.  See EOG Resources, Inc. v. Killam Oil Co., 239 S.W.3d 293,
304 (Tex. App.—San Antonio 2007, pet. denied) (holding recovery of attorney’s
fees is barred in a trespass to try title action because it is not provided for
in the Property Code).

Texas
case law indicates that, in most cases, the proper cause of action when title
is in dispute is a trespass to try title action.[5] 
Turquoise Bay argues that this rule is inapplicable here because the relief it
sought and was awarded is significantly different from the relief available in a
trespass to try title action.  It notes that it received a declaratory judgment
that it was the proper operator of three wells, that it was not a trespasser as
to those wells, and that the purchasers were authorized to release all
production payments to it.  Turquoise Bay also argues that the judgment does
not vest any title but merely recites that some of the leases were valid.

Turquoise
Bay’s argument misreads the trial court’s ruling.  When the trial court found
that Turquoise Bay’s leases were valid, the court was not resolving a question
about the validity of those leases at the time of their execution or whether
they were otherwise proper and enforceable.  It found that those leases were
still in existence.  When the trial court found that Turquoise Bay was the
proper operator, it was because Turquoise Bay had timely commenced reworking
operations; therefore, the leases were still valid.  When it found that Turquoise
Bay and not Teon Management was entitled to the suspended runs, this was
because Turquoise Bay’s leases were still in existence.  Each of these
decisions is a title determination.  See Marshall, 288 S.W.3d at 453
(case was not a proper declaratory judgment action because it did not involve
the construction of a lease but whether the operator had engaged in good faith
drilling or reworking operations without a sixty-day cessation and whether it
had committed fraud); Pool, 30 S.W.3d at 636–37 (case was essentially a
trespass to try title action because the suit did not involve the construction
of the leases but an evidentiary determination of whether production had terminated).

Turquoise
Bay contends that, nonetheless, a declaratory judgment action was appropriate
because the construction of the leases’ savings clause was a pervasive issue.  Turquoise
Bay argues, for example, that there was extensive dispute over the meaning of
the phrase “operations for drilling or reworking.”  But, the jury charge confirms
that this case, much like Marshall and Pool, was ultimately an
evidentiary determination of whether Turquoise Bay’s leases had expired.[6] 
The jury was asked:

Question No. 1[7]

 

            Did
production of oil and gas from the wells listed below cease for a period of
more than sixty (60) consecutive days?

 

Question No. 2

 

            Did
Plaintiffs commence operations for reworking on the wells listed below within
sixty (60) days after production of oil and gas ceased?

 

            You are
instructed that “reworking operations” means any and all actual acts, work, or
operations in which an ordinarily competent operator, under the same or similar
circumstances, would engage in a good faith effort to cause a well or wells to
produce oil or gas in paying quantities.

 

Question No. 3

 

            Was
Plaintiffs’ failure to commence reworking operations on or the failure to
produce oil or gas from the well in question within 60 days excused by
operation of force majeure, or Federal or state law or any order, rule or
regulation of governmental authority?

 

            You are
instructed that effect of a force-majeure “is to excuse the lessee from
non-performance of lease obligations when the non-performance is caused by
circumstances beyond the reasonable control of the lessee or when
non-performance is caused by an event which is unenforceable at the time the
parties entered the contract.”

 

Question No. 4

 

A. 
Did any royalty owner or owners repudiate Plaintiffs’ title to the leases?

B. 
State the name and date of repudiation as to any royalty owner whom you have
found repudiated Plaintiffs’ title to the leases.

 

Question No. 5

 

            With
regard to Question No. 5, you are instructed that to be capable of producing
oil or gas, a well must be capable of producing oil or gas in paying quantities
without additional equipment or repairs.

 

            The term
paying quantities involves not only the amount of production, but also the
ability to market the product at a profit.  Whether there is a reasonable basis
for the expectation of profitable returns from the well is the test.  If the
quantity be sufficient to warrant the use of the product in the market, and the
income therefrom in excess of the actual marketing costs and operating costs,
the production satisfies the term “in paying quantities.”

 

            In the
case of a marginal well, the standard by which paying quantities is determined
is whether or not under all the relevant circumstances a reasonably prudent
operator for the purpose of making a profit and not for speculation, continue
to operate the well in the manner in which the well was operated.

 

A.   
 On March 12, 2007, were these wells shut-in and capable of producing
only gas and not oil in paying quantities?

B.    
On December 14, 2006, were these wells shut-in and capable of producing
only gas and not oil in paying quantities?

C.    
On March 12, 2007, were these wells shut-in and capable of producing oil
or gas in paying quantities?

D.   
On December 14, 2006, were these wells shut-in and capable of producing
oil or gas in paying quantities?

 

Question No. 6[8]

 

Did
Plaintiffs act in good faith in producing oil or gas from the wells listed
below after failing to commence drilling or reworking operations on the wells
listed below within sixty (60) days after production of oil and gas ceased?

 

You
are instructed that a person acts in good faith when that person does so with
an honest and reasonable belief in the superiority of that person’s title.

 

This charge
resolved a title question.  It did not resolve a lease construction dispute.

Turquoise
Bay also argues that Texas courts have allowed declaratory judgment actions in
very similar circumstances, and it points to decisions such as Ridge Oil Co.
v. Guinn Investments, Inc., 148 S.W.3d 143 (Tex. 2004).  In that case, a
lease covered two tracts and was maintained by production on only one tract. 
Ridge Oil, the lessee of the producing tract, shut in the wells and allowed the
lease to expire.  Guinn Investments was the lessee of the second tract.  It
filed a declaratory judgment action seeking a determination that the lease was
still in effect.  The supreme court affirmed a judgment for Ridge Oil,
including an award of attorney’s fees.  148 S.W.3d at 163.  The supreme court
did not mention trespass to try title claims, and there is no indication in the
opinion that either side ever raised the issue.  Conversely, in Martin,
133 S.W.3d at 264, the plaintiffs filed a declaratory judgment action over a
boundary dispute, and the defendants filed a counterclaim for trespass to try
title.   The supreme court contrasted trespass to try title suits with
declaratory judgment actions and noted that trespass to try title actions are “the
method for determining title to real property.”  Id. at 265–67 (citing
Section 22.001(a) of the Property Code).[9]

The
two decisions appear conflicting because, although both involved title deter-minations,
in Martin the court held that a trespass to try title suit was required,
whereas in Ridge Oil it affirmed a declaratory judgment without
referring to the Martin holding or otherwise explaining why a trespass
to try title suit was not required.  Other courts have held that a party waives
its right to insist upon a trespass to try title action when it fails to
object.  See, e.g., Krabbe v. Anadarko Petroleum Corp., 46 S.W.3d 308,
320-21 (Tex. App.—Amarillo 2001, pet. denied).  The supreme court’s decisions
in Ridge Oil and Martin can be reconciled using this principle. 
The trial court does not lose jurisdiction if a title dispute is erroneously
filed as a declaratory judgment action and may properly award declaratory
relief and attorney’s fees if no objection is raised.  Because Teon Management
objected to proceeding as a declaratory judgment action and to the award of
attorney’s fees, that situation is not present here.

Turquoise
Bay next contends that it was not required to file a trespass to try title
action because its suit was more akin to a suit to remove a cloud on title.  As
Turquoise Bay notes, the purpose of a traditional suit to quiet title is to
remove a cloud from the title created by an invalid claim.  See, e.g.,
Wright v. E.P. Operating Ltd. P’ship, 978 S.W.2d 684 (Tex. App.—Eastland
1998, pet. denied) (plaintiffs filed a suit to quiet title to challenge the
defendant’s title to the mineral estate); see also Thomson v. Locke, 1
S.W. 112, 115 (Tex. 1886) (a suit to quiet title lies “to enable the holder of
the feeblest equity to remove from his way to legal title any unlawful
hindrance having the appearance of better right”); Bell v. Ott, 606
S.W.2d 942 (Tex. Civ. App.—Waco 1980, writ ref’d n.r.e.) (the principal issue
in a suit to quiet title is the existence of a cloud that equity will remove). 
Even if Turquoise Bay is correct and this is a suit to remove a cloud on title,
that would not eliminate the need to satisfy the burden of proof required in
trespass to try title suits because of the competing claims to title.  See
Bell, 606 S.W.2d at 952 (“The plaintiff is not required to trace his title
to either the sovereign or to a common source with the defendant, unless, of
course, that proof is necessary to establish plaintiff’s superior equity and
right to relief.”).[10]
 Nor would it allow Turquoise Bay to recover attorney’s fees.  Sani v.
Powell, 153 S.W.3d 736, 745 (Tex. App.—Dallas 2005, pet. denied).[11]

Turquoise
Bay argues that this is more than a title dispute because the trial court
resolved other issues, such as its entitlement to production from the four
wells.  The trial court explained its rationale for allowing Turquoise Bay to
proceed with a declaratory judgment action as the presence of a request for a
declaratory judgment that Turquoise Bay was the lawful operator.  In Martin,
the supreme court held that the case necessarily involved a question of title
or else the parties would gain nothing by the judgment.  133 S.W.3d at 267. 
The same is true here.  

The
underlying dispute concerned such questions as who was the proper operator of
the wells and who was entitled to the production payments, but these are merely
restatements of the ultimate question:  Whose leases were in effect?[12] 
We do not hold that questions over who is the proper operator or who is
entitled to suspended runs can never be resolved in a declaratory judgment
action.  The dispositive question is:  What is the nature of the dispute?  For
example, if Teon Management and Turquoise Bay’s dispute over who was the proper
operator required a construction of a joint operating agreement to determine if
an election was properly conducted or if their dispute over suspended runs
required a construction of an assignment to determine the percentage of
ownership it conveyed, a declaratory judgment would be appropriate.  But this
case involved rival claims to the mineral estate, and every substantive issue
was resolved when the trial court determined who owned the mineral estate.  It
was, therefore, a title determination, and Turquoise Bay should have proceeded
with a trespass to try title suit.  See Veterans Land Bd., 281 S.W.3d at
627 (because case involved rival claims to the executive rights, a trespass to
try title rather than a declaratory judgment action was proper).  

We
cannot hold, however, that the trial court abused its discretion in failing to
sustain Teon Management’s special exceptions.  See Loeffler v. Lytle Indep.
Sch. Dist., 211 S.W.3d 331, 339 (Tex. App.—San Antonio 2006, pet. denied)
(holding that the trial court did not abuse its discretion in overruling the
defendant’s special exceptions because the “declaratory judgment action can be
characterized as a trespass to try title claim”).  In the case at issue, the
claims for declaratory relief can be characterized as claims for trespass to
try title.  Accordingly, we will analyze this case as a trespass to try title
case.  See Ramsey v. Grizzle, 313 S.W.3d 498, 504 (Tex. App.—Texarkana
2010, no pet.).  

The
plaintiff in a trespass to try title action is required to prove its title by
proving (1) a regular chain of conveyances from the sovereign to the plaintiff,
(2) a superior title to that of the defendant out of a common source, (3) title
by limitations, or (4) prior possession, which prior possession has not been
abandoned.  Rogers v. Ricane Enters., Inc., 884 S.W.2d 763, 768 (Tex.
1994).  On appeal, Teon Management asserts that Turquoise Bay did not offer the
necessary proof required to prove title.  At trial, however, it was undisputed
that Turquoise Bay was the successor in interest to the original leases and,
therefore, owned the leases that were at issue; the issue that was before the
jury was whether those leases had terminated.  From the beginning of trial, the
attorney for Teon Management informed the jury during his opening statement that,
in addition to McFarland & Scobey, “there were multiple other owners who
were working interest owners who were lessees, including Mr. Evans’ clients
[the plaintiffs].”  The Teon Management owner with knowledge of the leases at
issue testified at trial that “Mr. Holdridge and his group [Turquoise Bay] had
majority of the current ownership of the leases for the lessees.”   Additionally,
Turquoise Bay introduced into evidence the original leases, the joint operating
agreements wherein the original lessees assigned much of their interest in the
leases to the various working interest owners, the ballots from a majority of
the working interest owners authorizing Turquoise Bay to operate the wells, and
the authorization from the Railroad Commission for Turquoise Bay to operate the
wells.  At trial, the only disputed issue regarding the leases was whether they
had terminated according to their own terms.  See Ramsey, 313 S.W.3d at
505–06 (existence of lease was admitted when the parties’ pleadings
acknowledged its existence, the parties assumed that it had at one time been in
effect, and the entire trial was to determine whether the lease had expired by
its own terms).  

Furthermore,
it was undisputed that Turquoise Bay had prior possession of the wells.[13] 
“The doctrine of ‘prior possession’ . . . proceeds upon the theory that one in
possession should not be disturbed unless it be by one having a better title.” 
Reiter v. Coastal States Gas Producing Co., 382 S.W.2d 243, 251 (Tex.
1964).  A showing of prior possession gives rise to a rebuttable presumption
that the plaintiff has fee title to the property; proof of possession is
sufficient proof of title.  Id. at 248–49.  The defendant may rebut this
presumption by showing that it has better title to the property.  Id. at
251.

Teon
Management did not show that it had better title, nor did Turquoise Bay admit
that Teon Management had better title.  The record shows that, prior to
February 2007, the leases had been held by production, that Turquoise Bay
entered into possession of the wells in February 2007 and remained in
possession at the time of trial, and that Teon Management had never been in
possession of the wells.  Thus, Turquoise Bay established a prima facie case
and was presumed to have title.  See id. at 248–51.

Teon
Management argues on appeal that the presumption of prior possession does not
apply in this case because Teon Management had title or an ownership interest,
which rebutted the presumption or inference of ownership created by Turquoise
Bay’s prior possession.  Teon Management contends that the following assertions
from Turquoise Bay’s live pleading rebutted the presumption of ownership
arising from Turquoise Bay’s prior possession:  “Defendants entered into Oil,
Gas, and Mineral Leases on the same lands on which the wells are located in
February 2007,” and “Defendants have intentionally and unlawfully interfered
with the leases at issue by obtaining new leases from the Royalty Owners.”  Teon
Management relies on Clements v. Corbin, 891 S.W.2d 276, 280 (Tex.
App.—Corpus Christi 1994, writ denied), to support its contention.  We find Teon
Management’s reliance upon Clements to be misplaced because the pleading
there admitted “record title” in the opposing parties.  891 S.W.2d at 280.  Turquoise
Bay’s pleading did not admit title in Teon Management.  To the contrary, Turquoise
Bay asserted that it held valid leases and that Teon Management, by entering into
new leases covering the wells, interfered with Turquoise Bay’s preexisting leases. 
Turquoise Bay did not admit that Teon Management’s leases were valid or that
Teon Management held any title.  Turquoise Bay’s pleading, at most, constituted
an admission that Teon Management entered into leases with lessors who only had
a possibility of reverter and, therefore, no right to possess, explore for, or
produce the minerals.  See Pool, 124 S.W.3d at 194.

In order to rebut the presumption of title arising from Turquoise
Bay’s possession, Teon Management had to show that the leases had terminated.  This
is the very issue that the trial court resolved.  Turquoise Bay’s undisputed
possession gave rise to the presumption that it owned the leases and was
entitled to possession.

We hold that Turquoise Bay met its burden in two
ways:  by proving a superior title and prior possession.  Issues One and Six are overruled.  Issue Two, regarding the
unavailability of attorney’s fees in a trespass to try title suit, is sustained;
this holding moots Issue Five, also challenging the award of attorney’s fees.

 

 

IV. Failure to Timely
Commence Reworking Operations and Repudiation

In Issues Three and Four, Teon Management
challenges the sufficiency of the evidence supporting the jury’s finding that
Turquoise Bay began reworking operations on the Nichols No. 3 within sixty
days after the well ceased production.  Teon Management argues that the
undisputed evidence at trial showed that the Nichols No. 3 experienced two
periods of cessation of production; that this second period lasted from
December 8, 2007, to September 19, 2008; and that Turquoise Bay did not commence
reworking operations on the well until July 24, 2008.

Turquoise Bay does not dispute the existence
of this second period of cessation of production on the Nichols No. 3 or Turquoise
Bay’s failure to commence reworking operations within sixty days after the
beginning of this period.  Instead, Turquoise Bay argues that it was relieved
of the obligation to timely commence reworking operations by the lessors’
repudiation of the lease.  The issue of repudiation was submitted to the jury
but was conditioned on the jury’s finding that Turquoise Bay did not commence
reworking operations within sixty days of cessation of production.  Because the
jury found that Turquoise Bay timely commenced reworking operations, the jury
did not reach the issue of repudiation.

The law is well-settled in Texas that the repudiation
of a lease by a lessor relieves the lessee of any obligation to conduct any
operation on the land in order to maintain the lease in force pending a
judicial resolution of the controversy between the lessee and the lessor over
the validity of the lease.  Kothmann v. Boley, 308 S.W.2d 1 (Tex. 1957);
Cheyenne Res., Inc. v. Criswell, 714 S.W.2d 103, 105 (Tex. App.—Eastland
1986, no writ).  The doctrine of repudiation is a variation of the doctrine of
estoppel, and it applies when the lessor has asserted a clear, unequivocal
challenge to the lessee’s title in and to the interest created by the lease.  Cheyenne,
714 S.W.2d at 105.  Lessors who wrongfully repudiate the lessees’ title by
unqualified notice that the leases have terminated cannot complain if the
lessees suspend operations pending a determination of the controversy.  Kothmann,
308 S.W.2d at 4.

As evidence of repudiation, Turquoise Bay introduced
a letter that the working interest owners received on May 23, 2007, from the
attorney of several lessors stating that “it is the contention of [his] clients
that this lease has terminated and that Turquoise Bay Corporation d/b/a Bay
Operators is a bad faith trespasser on the land, that any oil or gas which it produces
and sells from the land has been converted, [and] that this is a bad faith
conversion.”  As noted in the letter, demand had already been made on Turquoise
Bay to vacate the premises.  In the letter, the working interest owners were
threatened with a lawsuit containing various causes of action and were
requested to sign a document releasing all of their interest in the lease. 
According to the letter, the lessors would not pursue the various claims
against the working interest owners personally if they signed the document.

Luis Eduardo Gomez, the president of
Turquoise Bay, testified that a problem with the Nichols No. 3 was originally
discovered in March 2007 but that, on the advice of legal counsel, Turquoise
Bay decided to “try to resolve the legal issues before [it] spent more money in
this well.”  Turquoise Bay filed this lawsuit on May 29, 2007.  Prior to the
suit being resolved and in response to increasing oil prices, Turquoise Bay, nevertheless,
commenced reworking operations in 2008 and spent almost $400,000 on the Nichols
No. 3.  As a result, the well again began producing.

As to the undisputed second period of
cessation of production, which began on December 8, 2007, we hold that Turquoise
Bay’s failure to timely commence reworking operations was excused under the
doctrine of repudiation.  The evidence conclusively established that the lease
through which Turquoise Bay claimed its interest in the Nichols No. 3 had been
repudiated by the lessors.  See Kothmann, 308 S.W.2d at 4; Cheyenne,
714 S.W.2d at 104–05.  The signing of new leases with Teon Management, the
demand to vacate the premises, and the letter from the lessors’ attorney plainly
stating that the lease “has terminated” constituted unqualified notice to
Turquoise Bay of the lessors’ repudiation.  Consequently, the lessors and Teon
Management are estopped from complaining about the second period of cessation
of production.  We overrule Teon Management’s third and fourth issues.

V.
Conclusion

 The judgment of the trial court is affirmed in part and
reversed and rendered in part.  That portion of the judgment awarding Turquoise
Bay attorney’s fees is reversed, and judgment is rendered that Turquoise Bay
take nothing on its claim for attorney’s fees.  In all other things, the
judgment of the trial court is affirmed.

 

 

                                                                                    TERRY
McCALL

October 27, 2011                                                        JUSTICE

Panel consists of:  Wright, C.J.,

McCall, J., and Kalenak, J.









[1]The plaintiffs/appellees are Turquoise Bay Corporation
d/b/a Bay Operators; Gloria Ruth Johnson; Lois Fay Echols; R & C Land
& Cattle Co.; Adam Praisnar; Ann Praisnar; JDJMT, Ltd.; Petroleum Growth
Fund 2003, Ltd.; B & F Company; B.J. Blackstock; James P. Chonka; Preasley
Cooper; Donnell Echols; First National Bank of Denver City; G. Murthy
Gollapudi; Luis Gomez; Mitzi Griffith; John Holdridge; Natalie Jarrett; Ray
Holdridge; Davey & Patrick Lawson; Locker Brothers Partnership; John M.
Lowrance; Jackie Mitchell; James Mitchell; Myrle Mitchell Estate; Doris &
Stanley Neujahr; C.E. Nipp; Martha J. Nugent; Joyce Rodriguez; Michael C.
Smith; Telluride Company (Stann); Telluride Company (Wulfe); Trobaugh
Properties; Daniel R. Walsh; James R. Weber; Marvin L. Wigley; Marc
Hellinghausen; Sidney R. Hutchinson; and W. Olin McMillian.  For simplicity, we
will collectively refer to them as Turquoise Bay.

 





[2]The defendants were Teon Management, LLC; Republic Oil
& Gas Company; Kynn and Jan Maxwell; Dovie Nichols; Claudia Chase; Tammy N.
Dyer; Grady Lee Grantham; Glenn (Bud) Grantham; Katherine N. Grantham; Sandra
N. Hodnett; Joe Hughes; Kay Long; Kathy J. Maxwell; Chad Nichols; Donald
Nichols; Danny Lee Nichols; John Roy Nichols; John P. Nichols, Jr.; Mark
Nichols; Jennifer Dawn McNeill; Robert Carl Nichols; Jean Parker; Charles A.
Peugh; Vicky Ware; J.D. Crawford; Elkin-Kennett Properties; Francis Caldwell
Elkin; Francis C. Elkin Trust; Virginia Louise Fuller; Louie G. & Evelyn
Koonce; P. Bush Elkin Property Company, Ltd.; Claudia Chase; Candelero Oil
& Gas Co.; Endeavor Energy Resources L.P.; Rick Reddy; Lewis Reddy Estate
Trust; Isramco Energy; Lynn F. Moore Estate; and Candelero Oil & Gas, Co.





 

[3]We note that five of the leases contained a provision
restricting the acreage that may be held by a single well and terminating the
leases as to all acreage except that allocated for proration allowable purposes
to a producing well.





[4]In the remainder of this opinion, we will refer to
these parties collectively as Teon Management.  





[5]See, e.g., Martin v Amerman, 133 S.W.3d 262, 264 (Tex. 2004); BP Am. Prod. Co.
v. Marshall, 288 S.W.3d 430, 453 (Tex. App.—San Antonio 2008), rev’d on
other grounds, 342 S.W.3d 59 (Tex. 2011); Veterans Land Bd. v. Lesley,
281 S.W.3d 602, 627 (Tex. App.—Eastland 2009), aff’d in part & rev’d in
part on other grounds, 2011 WL 3796568 (Tex. Aug. 26, 2011);  Natural
Gas Pipeline Co. of Am. v. Pool, 30 S.W.3d 618, 636 (Tex. App.—Amarillo
2000), rev’d on other grounds, 124 S.W.3d 188 (Tex. 2003); McRae
Exploration & Prod., Inc. v. Reserve Petroleum Co., 962 S.W.2d 676, 684
(Tex. App.—Waco 1998, pet. denied); Ely v. Briley, 959 S.W.2d 723, 727
(Tex. App.—Austin 1998, no pet.); Bell v. State Dep’t of Highways & Pub.
Transp., 945 S.W.2d 292, 294 (Tex. App.—Houston [1st Dist.] 1997, writ
denied), abrogated by Harris County v. Sykes, 136 S.W.3d 635 (Tex.
2004); Barfield v. Holland, 844 S.W.2d 759, 771 (Tex. App.—Tyler 1992,
writ denied).





[6]Courts have held that a declaratory judgment is proper
when a party requests the trial court to construe a deed or lease to determine
if the instrument is valid and conveys the purported interest in dispute.  See,
e.g., Sunwest Operating Co. v. Classic Oil & Gas, Inc., 143 Fed. Appx.
614, 620 (5th Cir. 2005); Ruiz v. Stewart Mineral Corp., 202 S.W.3d 242,
247 (Tex. App.—Tyler 2006, pet. denied).  No such questions were raised in this
dispute.





 

[7]The charge contained separate answer blanks for each
well.  For clarity, that portion of the charge has been omitted.  Also for
clarity, the instructions that have no bearing on this appeal have been
omitted.  This includes the limiting instructions.  We note that, because the
jury answered Question No. 2 yes for all three wells, it was instructed not to
answer Question No. 3.  Because the jury did not answer Question No. 3, it was
also instructed not to answer Question No. 4.





[8]This question was not conditioned.  There are yes
answers for all three wells.  Those answers have been marked out and replaced
with “N/A see Ques #2.”

 





[9]The legislature has since amended Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c)
(West 2008) to allow a declaratory judgment action “when the sole issue
concerning title to real property is the determination of the proper boundary
line between adjoining properties.”





[10]One commentator has described the scariest element of a
suit to quiet title as the possibility that a confused or inexperienced court
will confuse it with a trespass to try title suit and will require a strict
proof of title.  See Andy Carson, Selected Land Title Litigation
Issues, in Ernest Smith
Institute Papers (1998).  Carson recognizes, however, the necessity to
establish title when, as suggested by Bell, 606 S.W.2d at 952, the
plaintiff must establish a superior right to relief.





 

[11]See also Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint
Venture, 981 S.W.2d 951, 957 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied) (“Attorney’s fees are not available
in a suit to quiet title or to remove cloud on title.”).





[12]In Marshall, 288 S.W.3d at 453, the court held
that a request for an accounting did not alter the nature of the suit because
it was a form of further relief that accrued because of the underlying title
determination.





[13]Teon Management asserts that Turquoise Bay has waived
this ground because it failed to submit a jury question on prior possession.  See
Land v. Turner, 377 S.W.2d 181, 183 (Tex. 1964) (prior possession is an
independent ground of recovery and is waived if there are fact questions and no
jury question is submitted).  Because there were no fact questions on this
issue, it was not waived.